IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUQUIETA IVERSON-POPE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 24-381 (MN) |
| NEWPORT POLICE DEPARTMENT, et al., | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Juquieta Iverson-Pope, Newport, Delaware – *Pro Se* Plaintiff

Scott G. Wilcox, GIORDANO, DELCOLLO, WERB & GAGNE, LLC, Wilmington, Delaware – Counsel for Defendant Newport Police Department

Rosamaria Tassone-DiNardo, Deputy City Solicitor, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware – Counsel for Defendant Wilmington Police Department[1]

December 20, 2024
Wilmington, Delaware

---

[1] It appears that Plaintiff has not completed service on, and accordingly, no attorney has entered appearance for, Defendant Delaware State Police Department. This issue is further addressed in the corresponding Order.

**NOREIKA, U.S. DISTRICT JUDGE:**

On January 11, 2024, Plaintiff Juquieta Iverson-Pope electronically filed a Complaint, dated January 10, 2024, with the Superior Court for the State of Delaware against Defendants, Newport, Wilmington, and Delaware State Police Departments (PDs), regarding an allegedly unlawful residential search and seizure. (D.I. 1-1 at 2-6.) Defendants Wilmington and Newport PDs subsequently removed the matter to this Court, as Plaintiff's Complaint raises constitutional claims and questions of federal civil rights law, pursuant to 42 U.S.C. § 1983. (D.I. 1). Presently before the Court is Defendant Wilmington PD's motion to dismiss for failure to state a claim (D.I. 3) and Defendant Newport PD's motion to dismiss for failure to state a claim (D.I. 5). Plaintiff has responded to both motions (D.I. 6), Defendant Wilmington PD has replied to Plaintiff's response (D.I. 7), and the Court now resolves the motions as set forth below.

## I.    BACKGROUND

In her Complaint, Plaintiff alleges that around 11:00 AM on January 6, 2022, officers from the Newport, Wilmington, and Delaware State Police Departments, along with federal agents, arrived at Plaintiff's residence in Newport, Delaware looking for Plaintiff's son. (D.I. 1-1 at 2). Plaintiff's son and his pregnant girlfriend were visiting Plaintiff at her residence when they noticed that the girlfriend's vehicle was being towed away outside. (*Id.* at 2-3). When the girlfriend went outside and asked why the vehicle was being towed, she was instructed by law enforcement to back up before she got detained. (*Id.* at 3).

Law enforcement allegedly then proceeded to use roadblocks, tanks, firearms, heated drones, a power outage, and toxic bombs to draw out and arrest at least four individuals who were inside Plaintiff's residence, one of whom was Plaintiff's son's girlfriend. (*Id.*). Toxic chemicals inside Plaintiff's residence made it so that no resident could stay in the home and "[e]verything was destroyed." (*Id.* at 4). Plaintiff called 911, seeking medical attention due to the effects of the

1

toxic chemicals, and the call was transferred to a chief of police who was outside the residence with an ambulance. The chief of police asked Plaintiff where her son was, and when she said that she did not know, the police chief instructed Plaintiff to cover her face with a wet towel and to crawl out the front door of her residence. (*Id.*).

Plaintiff alleges that she was having difficulty breathing and moving her legs, and she was concerned for her physical health due to preexisting conditions, including asthma and knee pain. (*Id.* at 4-5). Plaintiff was also distrustful of the officers outside and feared for the lives of the people and pets inside her home. (*Id.*). Plaintiff did not understand why law enforcement had not first knocked on her door and asked for her son. (*Id.* at 5). Plaintiff contacted the local news regarding the situation. (*Id.* at 4).

Around 9:00 PM that evening, Plaintiff's son was taken into custody. (*Id.* at 5). Afterwards, paramedics were permitted to enter Plaintiff's home, "pick [her] body off the floor," and transport her to the hospital. (*Id.*). Plaintiff alleges she was traumatized by the experience, loud noises are now triggering to her, and she now takes a medication for the condition. (*Id.*). Plaintiff seeks $1 million in compensation for the damage to her home, the relocation costs for when the home was uninhabitable, and Plaintiff's pain and suffering due to the unlawful search and seizure, harassment, and false accusations by law enforcement. (*Id.*).

## II.    <u>LEGAL STANDARDS</u>

A defendant may move to dismiss a complaint under Rule 12(b)(6) of the Federal Rule of Civil Procedure for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint, the court must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## IV. DISCUSSION

As a preliminary matter, claims brought under § 1983 are subject to the statute of limitations for personal injury actions in the state in which the suit is brought. *See O'Connor v. City of Newark*, 440 F.3d 125, 126–27 (3d Cir. 2006). In Delaware, the statute of limitations for personal injury claims is two years from the date the cause of action accrued. *See* 10 Del. C. § 8119; *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) (citations omitted). Accrual of a cause of action under § 1983 begins when a plaintiff "knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The Complaint alleges that Plaintiff's cause of action accrued on January 6, 2022, the date on which the residential search and seizure warrant was executed. (*See* D.I. 1-1 at 2). As such,

3

Plaintiff's Complaint, dated January 10, 2024, and electronically filed the next day, was untimely; the statute of limitations terminated two years after the incident on January 6, 2024. Accordingly, this action is time-barred, and amendment appears futile.

Additionally, a municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Although a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The record includes no evidence regarding Defendants' policies or customs or any resulting courses of conduct. Absent any allegation that a municipal custom or policy directly caused harm to Plaintiff, § 1983 claims against the moving Defendants cannot stand. Accordingly, dismissal of this action is also warranted for failure to state a claim against the moving Defendants.

## V.   **CONCLUSION**

For the above reasons, the Court will grant Defendant Wilmington and Newport PDs' motions to dismiss. (D.I. 3, 5).

An appropriate Order will be entered.